Jones v. Hacker, Not Reported in F.Supp.3d (2015)

2015 WL 1279357
Only the Westlaw citation is currently available.
United States District Court,
E.D. Oklahoma.

1. Justin Lee JONES, Plaintiff,

v.

1. Aaron HACKER, in his individual and official capacity, 2. James Zeigler, in his
individual and official capacity, 3. Jennifer Arnold, in her individual and official
capacity, 4. City of Beggs, a municipal corporation, 5. Eddy Rice, in his individual and
official capacity, 6. Linda Beaver, in her individual and official capacity, Defendants.

No. 13–CV–444–JHP.
|
Signed March 20, 2015.

**Attorneys and Law Firms**

Michael James King, Ronald M. Fraley, Winters & King, Inc., Tulsa, OK, for Plaintiff.

Carly Griffith Hotvedt, Thomas A. Leblanc, Best & Sharp, Tulsa, OK, for Defendants.

### *ORDER AND OPINION*

JAMES H. PAYNE, District Judge.

**\*1** Before the Court is the Defendant Linda Beaver, in her official capacity's ("Defendant"), Motion for Summary Judgment, filed October 29, 2014 [Dkt. 78], and Defendant's corrected Motion for Summary Judgment [Dkt. 82]. Plaintiff filed an Objection and Response thereto on November 25, 2014 [Dkt. 100] and Defendant filed a Reply brief on December 9, 2014 [Dkt. 108].

### I. Introduction

The Court finds that the following material facts are not substantially disputed:

Defendant is the elected Court Clerk of Okmulgee County, a position she has held since April 1994. In the course and scope of her duties, Defendant oversees the criminal and civil court files for all matters pending and concluded before the District Court of Okmulgee County. In addition, she also supervises and provides training for a number of deputy clerks in her office.

Prior to 1997, the Court Clerk's office maintained a paper records and filing system. Upon instruction by the Office of the Supreme Court Administrator, in 1997, the Okmulgee Court Clerk's Office, and many of the Court Clerks across the State of Oklahoma, installed and implemented use of a computer system known as Kellpro, which was created specifically for use by Court Administrators in the State of Oklahoma.

In 1995, a Justin Riley Jones (not the Plaintiff herein) was arrested and prosecuted for drug charges unrelated to this action, and he was placed on a probationary status, requiring the payment of fines and court costs, to be handled through the Okmulgee

EXHIBIT 32

County Court Clerk's office. At that time, records associated with Justin Riley Jones were kept on a paper docket associated with the subject case file, file number CF–95–052.

In approximately 2003 or 2004, the Office of the Supreme Court Administrator required the Court Clerk to designate a deputy clerk as a Cost Administrator. The Cost Administrator was responsible for, among other duties, tracking payments and receipts for the collection of fines and court costs associated with the dockets of the Okmulgee County Clerk. Each Cost Administrator was provided training upon appointment through the Office of the Supreme Court Administrator, as well as given on-the-job training by the outgoing Cost Administrator. In addition, all deputies received on-the-job training and annual training on the Kellpro system by Kellpro administrators both in classes in Oklahoma City and at the Okmulgee County Court Clerk's Office. In 2008, Jennifer Arnold was the Cost Administrator for Okmulgee County.

In 2008, the Plaintiff received a traffic ticket by the Oklahoma Highway Patrol and his information was entered into the Kellpro system. It is not known who entered the information for the Plaintiff into the Kellpro system. When the Plaintiff paid his traffic ticket in case TR–08–01157, deputy clerk Liz Frost provided a receipt for payment of the ticket in the name of Justin Riley Jones, not Justin Lee Jones. While this appears to be the first instance of transposing Justin Riley Jones with Justin Lee Jones in the Court Clerk's Kellpro System, this information did not change any information for either Justin Jones in the matter identified as CF–1995–052, the criminal matter of Justin Riley Jones. No warrant was ever issued in regard to matter TR–08–01157, and that matter is considered concluded as of the date of payment, November 18, 2008.

 **\*2**  It was the commonly understood practice that the Okmulgee County judges expect the Court Clerk's office, specifically the Cost Administrator, to determine those criminal defendants who failed to pay court-ordered fines in criminal cases and to prepare and issue bench warrants for the judges' signature for those persons. As Cost Administrator, Jennifer Arnold, like anyone in that position, was responsible for periodically running an Accounts Receivable Reports ("AR Report") to determine those criminal defendants who failed to pay court-ordered fines in criminal cases and to issue bench warrants for the judges' signature for those persons. AR Reports are run on the Kellpro system by typing the letters "AR" into a report type field and requesting the report be run through the date the report is requested. When an AR Report is run, every name in the system appears on a screen alphabetically, and a delinquency designation appears next to the name. The time for the delinquency is then checked by the deputy running the AR Report, and if it is extensive, the case is marked for a bench warrant by placing a command letter "B" on the line next to the name of the defendant owing money to the court. Once all delinquent cases are designated for warrant with a letter "B," a command to print warrants for those cases so designated is given, and the warrants are automatically prepared and printed out in a single batch. The warrants are then provided to the Court for review and approval by the attending judge, who then signs the warrants and returns them to the Court Clerk's Office, which then issues the warrant. In issuing a warrant, it is filed with the Clerk's Office and faxed to the Sheriff's Office. As batches of warrants are issued, operators of the On Demand Court Records ("ODCR") system, managed by the Oklahoma Supreme Court, directly download information from the Court Clerks' Kellpro System on a periodic, though not necessarily consistent basis.

In 2009, Justin Riley Jones failed to pay fines and fees associated with his criminal action. In accordance with her duties, Jennifer Arnold ran an AR Report, designating case number CF–1995–052 for a bench warrant, and printed a batch of warrants, in which it was included. There is no indication as to who entered any information into the Kellpro System identifying Justin Riley Jones, including identifier information such as date of birth, social security number, or name. However, this information was entered prior to the date the warrant was issued, and the warrant featured only that information already on the Kellpro system as of the date the batch of warrants was run in accordance with the AR Report.

Jennifer Arnold printed the applicable warrant on August 19, 2009. The warrant identified the defendant as "Justin Lee Jones," with a date of birth of 7/26/1981. The warrant was then signed by Judge Cynthia Pickering and returned to the Court Clerk's Office, where it was received and issued on August 31, 2009. In addition, Jennifer Arnold sent a Notice of Bench Warrant to Justin Lee Jones, in association with Case No. CF–1995–052. Plaintiff claims that upon receipt of this letter, his wife contacted the Okmulgee County Court Clerk's Office to report that it was submitted to the wrong Justin Jones. Plaintiff's wife does

not know who she spoke with, and Jennifer Arnold has no recollection of any such conversation. Furthermore, the evidence demonstrates that, at that time, anyone working in the Court Clerk's Office could have received the call.

**\*3** No further payment was received on the criminal matter, Case No. CF–1995–052, and in May 2012, an AR Report run by Jennifer Arnold again reflected this matter was delinquent. In the manner described above, a second bench warrant was prepared and issued on May 4, 2012. The second warrant featured the correct birth date for Justin Riley Jones (DOB: 3/7/1974), but had the name "Justin Lee Jones," on its face. Once again, this information was what was included in the Kellpro system already, at the time the warrant batch was prepared.

On January 19, 2013, Defendant Aaron Hacker, an Officer with the City of Beggs, Oklahoma, reviewed the ODCR system and learned of an outstanding warrant for the arrest of a defendant named Justin Lee Jones. When Officer Hacker, accompanied by Officer Ziegler, approached the Plaintiff at his home, Plaintiff refuted the accuracy of the warrant and requested his wife be allowed to return home and provide the notice they received in regard to the first warrant. Officer Hacker then contacted dispatch for the City of Beggs to verify the information on the warrant, specifically asking for verification of the Plaintiff's birth date and whether it matched the outstanding warrant associated with Case No. CF–1995–052. Dispatch for the City of Beggs confirmed that the Plaintiff's birth date of 7/26/1981 was the correct birth date associated with the outstanding warrant. Officer Hacker then placed the Plaintiff under arrest and transported him to the Okmulgee County Jail.

Once he arrived at the jail, the Plaintiff was booked in, but was not "dressed out," placed in general population, or placed in any cell. Rather, he was allowed to sit on a nearby bench in the booking area for approximately an hour, until his wife appeared with money she obtained from her father and paid the outstanding payment associated with Case No. CF–1995–052, in the amount of $382.98. Upon receipt of the payment, Plaintiff was immediately released, and has since been refunded the money.

Aside from this case, there is no evidence of any prior instances where the Court Clerk's Office has issued warrants erroneously identifying the wrong criminal defendant. There is no evidence that Jennifer Arnold, or any other officer or employee of the Court Clerk's Office, deliberately and knowingly mis-placed Plaintiff's name on the subject bench warrant in order to get him arrested or violate his rights. Furthermore, there is no evidence that Defendant was personally involved in any of the incidents alleged in this suit, or that she had any knowledge of any impropriety or wrongdoing on the part of Jennifer Arnold, any other officer or employee of the Court Clerk's Office, with regard to the issuance of erroneous warrants.

Plaintiff asserts claims against the Defendant under 42 U.S.C. § 1983 for violation of his Fourth and Fourteenth Amendment rights based upon his arrest pursuant to the erroneous bench warrant. Plaintiff also asserts claims against Defendant under state tort law.

## II. Standard of Review

**\*4** Defendant has moved for summary judgment as to all claims against her. Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court held that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." The Court further held that "if the evidence is merely colorable, or not significantly probative, summary judgment may be granted." *Id.* In addition, the *Anderson* Court stated that "the mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id.* A movant's summary judgment burden may properly be met by reference to the lack of evidence in support of plaintiff's position. *See Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir.1998) (citing *Celotex,* 477 U.S. at 325).

Furthermore, as described by the court in *Cone v. Longmont United Hosp. Ass'n.,* 14 F.3d 526 (10th Cir.1994), "Even though all doubts must be resolved in (the nonmovant's) favor, allegations alone will not defeat summary judgment." *Cone* at 530 (citing *Celotex,* 477 U.S. at 324). *See also Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991); *Roemer v. Pub. Serv. Co. of Colo. .,* 911 F.Supp. 464, 469 (D.Colo.1996). Moreover, "(i)n response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988).

## III. Discussion

### A. State Law Tort Claims

In the Fifth Cause of Action of the Complaint, Plaintiff asserts a claim against Defendant for "Negligent Hiring, Training and Retention." [Dkt. 5, p. 13]. It is unclear from the Complaint whether these claims against the Defendant are intended to be brought under 42 U.S.C. § 1983, or as state law tort claims, or both. In her Motion, Defendant argued that, under the terms of the Oklahoma Governmental Tort Claims Act, she is immune from suit for any state law tort claims asserted by Plaintiff. Plaintiff did not respond to this argument. In his Response, Plaintiff agrees that the Defendant is entitled to summary judgment with regard to his claims of "negligent hiring" and "inadequate supervision." However, Plaintiff did not clarify whether such claims were purported to be brought pursuant to § 1983 or state tort law, or the basis for his concession that the Defendant was entitled to summary judgment with regard thereto. As such, the Court finds that, to the extent that Plaintiff may be attempting to assert any state law tort claims against her, the Defendant is entitled to summary judgment with regard thereto for the reasons set forth in the Defendant's Motion.

### B. 42 U.S.C. § 1983

#### 1. Quasi–Judicial Immunity

 **\*5** In her Motion, Defendant argues that she is entitled to absolute quasi-judicial immunity with regard to Plaintiff's § 1983 claims. "[I]mmunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aid of the judge is involved....Thus, absolute judicial immunity has been extended to non-judicial officers where "their duties had an integral relationship with the judicial process." *Whitesel v. Sengenberger,* 222 F.3d 861, 867 (10th Cir.2000) (citations and internal quotation marks omitted). "... [W]hen a court clerk assists a court or a judge in the discharge of judicial functions, the clerk is considered the functional equivalent of the judge and enjoys derivative immunity." *Trackwell v. U.S. Gov't,* 472 F.3d 1242, 1247 (10th Cir.2007). The issuance of warrants is a judicial function for which court clerks and their deputies are entitled to absolute quasi-judicial immunity. *See Thomas v. Palacios,* 194 F.3d 1321, 1999 WL 710340, at \*1 (10th Cir.1999) (unpub); *Newton v. Buckley,* 127 F.3d 1109, 1997 WL 642085, at \*4 (10th Cir.1997) (unpub). Moreover such quasi-judicial immunity even extends to purely administrative and ministerial acts of preparing warrants at the direction of a judge. *Martinez v. Lucero,* CIV 11–1003 JB/LFG, 2012 WL 2175772, ——24–26 (D.N.M. May 31, 2012) (unpub).

This immunity would apply to Defendant in her individual capacity. However, with regard to Defendant in her "official capacity," official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent ." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Because of this, governmental employees sued in their official capacities can only assert forms of sovereign immunity which the governmental entity may possess; personal immunity defenses (such as quasi-judicial immunity) are not available to them. *Graham,* 473 U.S. at 166–67. Even so, the

issue of quasi-judicial immunity is moot because there was no underlying violation of the Plaintiff's constitutional rights as further set forth below.

## 2. Underlying Constitutional Violation

Defendant is sued in her "official capacity." Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell,* 436 U.S. at 690 n. 55. However, "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir.1993) (citations omitted). This is so "regardless of whether the municipality's policies might have 'authorized' such harm." *Id.* (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)); *see also Walker v. City of Orem,* 451 F.3d 1139, 1152 (10th Cir.2006) (a plaintiff suing a county under section 1983 for the actions of one of its officers must demonstrate that a municipal employee committed a constitutional violation); *Livsey v. Salt Lake County,* 275 F.3d 952, 958 (10th Cir.2001) (defendants' actions did not violate constitutional rights and could not have caused the county to be held liable based on their actions).

**\*6** For the reasons discussed further below, the Court finds that there was no underlying violation of the Plaintiff's constitutional rights. Thus, there is no basis for the imposition of municipal liability under § 1983, and the Defendant is entitled to summary judgment with regard to said claims.

### a. Arrest

Defendant argues that there was no underlying violation of Plaintiff's Fourth Amendment rights with regard to his arrest because the officers who arrested him did so pursuant to facially valid bench warrant and, thus, had probable cause for the arrest.

> When a probable cause determination was based on reasonable but mistaken assumptions, the person subjected to a search and seizure has not necessarily been the victim of a constitutional violation. The very phrase "probable cause" confirms that the Fourth Amendment does not demand all possible precision.

*Herring v. United States,* 555 U.S. 135, 139, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).

Numerous courts have concluded that arrests on recalled or invalid warrants *did not* violate constitutional rights where the arresting officer was not aware that the warrant had been recalled or was otherwise invalid. See *Mitchell v. Aluisi,* 872 F.2d 577, 579 (4th Cir.1989) (arrest on recalled bench warrant did not violate plaintiff's constitutional rights where deputies were unaware of order withdrawing warrant); *Hanks v. Cnty. of Delaware,* 518 F.Supp.2d 642, 649–50 (E.D.Pa.2007) (arresting officer had probable cause to arrest on 20 year old bench warrant that was invalid, but which officer did not know was invali at the time of arrest); *Davis v. Williams,* No. 90–4166–C, 1992 WL 50877, \*6 (D.Kan. Feb.27, 1992) (unpub) (arrest of plaintiff on misdemeanor warrant that had been placed on hold did not violate plaintiff's constitutional rights because officers had no reason to know of the hold). Here, there is no evidence that the officers who arrested Plaintiff were aware that the subject bench warrant was erroneous at the time of the arrest. In fact, when Plaintiff protested that he was not the individual identified in the warrant, Officer Hacker contacted dispatch for the City of Beggs to verify the information on the warrant, specifically asking for verification of the Plaintiff's birth date and whether it matched the outstanding warrant associated with Case No. CF–1995–052, and dispatch confirmed that the Plaintiff's birth date of 7/26/1981 was the correct birth date associated with the outstanding warrant.

In response, Plaintiff argues that his Fourth Amendment rights were violated when he was arrested on the erroneously issued bench warrant because "[a] mistakenly issued or executed warrant cannot provide probable cause for an arrest." [Dkt. 100, p. 24]. In support of this argument, Plaintiff cites *Berg v. County of Allegheny,* 219 F.3d 261 (3rd Cir.2000) and *Whitely v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). However, both Plaintiff and the *Berg* court's mutual reliance upon

*Whitely* for this proposition is misplaced. In *Whitely,* the subject warrant was erroneously issued because it was based solely upon the sheriff's conclusory complaint that the defendants committed the alleged offense; the complaint was devoid of any factual basis for the sheriff's conclusion. *Id.* at 563–64. Thus, the warrant in that case was insufficient to establish probable cause to arrest anyone regardless of whether or not the defendants were incorrectly named therein.[1] That is certainly not the situation in this case.

**\*7** Plaintiff's further reliance on *Powe v. City of Chicago,* 664 F.2d 639 (7th Cir.1981) for the proposition that a warrant that incorrectly names the person to be arrested is insufficient to support probable cause unless it contains some other description of the arrestee is also misplaced. In fact, the *Powe* court qualified its holding as follows:

> We do not hold that every arrest is necessarily invalid whenever it incorrectly names the intended arrestee and contains no other description of him. A case may be hypothesized in which the authorities responsible for preparing the warrant have good reason to believe that the name on the warrant is the real name of the intended arrestee, and have no reason to suspect otherwise. Our holding here is not addressed to such a case. In this case our holding is simply that where, as is alleged here, the authorities had reason to suspect that the name placed on the warrant was not the real name of the intended arrestee, then some other description of the intended arrestee, sufficient to identify him, must be included in the warrant.

*Id.* at 647. Here, there is no evidence that the officers who arrested Plaintiff had reason to suspect that the name on the warrant was not the real name of the intended arrestee.

> When a defendant is named in a bench warrant, probable cause for arrest exists, and any Fourth Amendment argument arising out of the arrest is without merit even if the bench warrant later turns out to be invalid ... This is true as long as a reasonably well-trained officer would not have known that the arrest was illegal despite there being a bench warrant.

*Hanks v. Cnty. of Delaware,* 518 F.Supp.2d 642, 649 (E.D.Pa.2007) (citing *U.S. v. Leon,* 468 897, 922 n. 23 (1984); other internal citations omitted).

Plaintiff further asserts that the subject bench warrants were not facially valid because they incorrectly named the person to be arrested. [Dkt. 100, p. 25]. However, there is no legal support for this assertion. " 'Facially valid' does not mean 'lawful.' An erroneous order can be valid." *Turney v. O'Toole,* 898 F.2d 1470, 1473 (10th Cir.1990) (citing *Baker v. McCollan,* 443 U.S. 137, 143–44, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). The subject warrant in this case was obviously facially valid—it clearly identified the defendant as "Justin Lee Jones," with a date of birth of 7/26/1981, and was signed by a judge. Furthermore, "[a]s a policy matter, law enforcement officers must not be required to act as pseudo-appellate courts scrutinizing the orders of judges because '[t]he public interest demands strict adherence to judicial decrees.' " *Zamora v. City of Belen,* 383 F.Supp.2d 1315, 1326 (D.N.M.2005) (quoting *Valdez v. City and County of Denver,* 878 F.2d 1285, 1289 (10th Cir.1989)).

Accordingly, the Court finds that the officers had probable cause to arrest Plaintiff based upon a facially valid bench warrant and, thus, the arrest did not violate Plaintiff's constitutional rights.

### b. Issuance of the Bench Warrant

**\*8** Defendant also argues that the mere issuance of the erroneous warrant in this case did not violate Plaintiff's constitutional rights. "Where a defendant does not intentionally cause the plaintiff to be seized, but is nonetheless responsible for the seizure, it may be that a due process 'deliberate indifference' rather than a Fourth Amendment analysis is appropriate. *Berg v. Cnty. of Allegheny,* 219 F.3d 261, 274 (3d Cir.2000) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 843–44, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). However, there is no evidence in this case that Jennifer Arnold, or any other employee of the Court Clerk's Office, was deliberately indifferent to a substantial risk that Plaintiff might be erroneously arrested. The Tenth Circuit has stated that "[l]iability under § 1983 must be predicated upon a *deliberate* deprivation of constitutional rights by the defendant, and not on negligence." *Darr v. Town of Telluride, Colo.,* 495 F.3d at 1256 (emphasis in original)(internal quotation marks omitted)(internal citations and quotes omitted). Here, Plaintiff has no evidence that Defendant, Jennifer Arnold, or any other

officer or employee of the Court Clerk's Office deliberately and knowingly mis-placed his name on the subject bench warrant or deliberately set out to have him falsely arrested or otherwise cause him harm. At most, Plaintiff has merely shown some evidence suggesting negligence on the part of Jennifer Arnold and/or some other unidentified employee(s) of the Court Clerk's Office. He certainly does not have any evidence indicating that the issuance of the subject warrant was anything other than an inadvertent mistake. However, "[n]egligence by public officials is not actionable as a due process violation." *Id.* (citations omitted). There is simply no liability under § 1983 for inadvertent mistakes, innocent errors, or simple negligence. *See Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

In response, Plaintiff argues that Defendant Arnold violated his Fourteenth Amendment rights to due process "because for nearly three years she had personal knowledge that a warrant she issued in 2009 for Justin's arrest contained erroneous information" [Dkt. 100, p. 27] and she "deliberately failed to recall the 2009 warrant, [and] made no attempt to identify the correct criminal defendant ..." [Dkt. 100, p. 28]. Plaintiff's argument in this regard is premised upon Plaintiff's conclusory assertion that "**Defendant Arnold was notified by Tammy Jones three years prior to Justin's arrest** that she had erroneously issued the 2009 warrant that incorrectly named an innocent person." [Dkt. 100, p. 27, emphasis original]. However, there is simply no evidence to support this assertion—it is premised purely upon speculation. The only facts which Plaintiff can muster in support of this assertion are that Mrs. Jones called the Court Clerk's Office regarding the matter in 2009, that the number was for the telephone at Arnold's desk, that someone answered the phone and advised her that they would take care of it. However, it is undisputed that Mrs. Jones does not know who she spoke with, and that Arnold has no recollection of any such conversation. Furthermore, the evidence demonstrates that, at that time, anyone working in the Court Clerk's Office could have picked up the call. As such, Plaintiff's argument that Arnold had personal knowledge that there was such erroneous information in the Court Clerk's records for nearly three years, but did nothing to correct it, is nothing more than unsupported speculation.

 **\*9** Even assuming, *arguendo,* that this evidence was sufficient to support a reasonable inference that it was Arnold who received Mrs. Jones' phone call, there is no evidence that any failure to correct the information on her part, or on the part of any other clerk, was deliberate, as opposed to a simple negligent oversight. Negligence—even gross negligence—is insufficient to support a claim of deliberate indifference under § 1983. *Berry v. City of Muskogee, Oklahoma,* 900 F.2d 1489, 1495 (10th Cir.1990) (citing *City of Canton v. Harris,* 489 U.S. 378, 388 and n. 7, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Regardless, there is certainly no evidence in this case that any such deliberate refusal on the part of Defendant Arnold or any other clerk was caused by any policy, practice, or custom of the Muskogee County Court Clerk's Office. Plaintiff asserts that the Court Clerk's Office did not have a formal written policy or procedure to deal with conflicting or inaccurate information contained in a warrant and that deputy clerks received no training on how to handle a situation where they received notification of same. [Dkt. 100, p. 10, ¶ 2–p. 11, ¶ 3]. However, Defendant clearly testified at deposition that the Okmulgee County Court Clerk's Office has an unwritten policy and practice for dealing with conflicting or inaccurate information contained in a warrant. It is irrelevant to Plaintiff's claims herein whether that policy and practice was written or unwritten. Furthermore, there is simply no evidence in the record to support Plaintiff's assertion that the deputy clerks received no training on how to handle a situation where they received notification of conflicting or inaccurate information contained in a warrant. Plaintiff's assertion in this regard is based solely upon a misstatement of Jennifer Arnold's deposition testimony. There is no other evidence in the record to support it.

Moreover, the mere issuance of erroneous bench warrants simply does not raise any constitutional concerns. *See Oryem v. Richardson,* 499 F. App'x 778 (10th Cir.2012) *cert. denied,* —— U.S. ——, 133 S.Ct. 1821, 185 L.Ed.2d 834 (2013) (motorist did not suffer injury cognizable under § 1983 from erroneous issuance of bench warrant based on magistrate court manager's alleged failure to remove warrant from law enforcement databases). Accordingly, the Court finds that there was no underlying violation of the Plaintiff's constitutional rights on the part of Jennifer Arnold, or any other employee of the Court Clerk's Office, with regard to the issuance of the erroneous bench warrant.

### 3. Policy, Practice, or Custom

Again, Defendant is sued in her "official capacity." Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell,* 436 U.S. at 690 n. 55. However, municipal liability under § 1983 cannot be based upon the doctrine of *respondeat superior* or vicarious liability. *Id.* at 694–95. In *Monell,* the Supreme Court held that a governmental entity is only liable under § 1983 when the constitutional injury can fairly be said to have been caused by that entity's own policies and customs. *Id.* at 694. The actions of the governmental entity must be the moving force behind the constitutional violation. *Id.* The Supreme Court has held that governmental liability for a constitutional violation "attaches where-and only where-the entity makes a deliberate choice to follow a course of action from among various alternatives." *Pembaur v. Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1291, 89 L.Ed.2d 425 (1986).

**\*10** Defendant may not be held liable simply because she "employs a tortfeasor." *Board of County Commissioners of Bryant County, Oklahoma v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). Additionally, "[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation." *Id.* at 406–07. Rather, *Monell* requires Plaintiff to establish that a policy or custom of the Okmulgee County Court Clerk's Office exists and that it caused the alleged constitutional violations. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 821–22, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *see also Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir.1993) (plaintiff must show that there is a direct causal link between the policy or custom and the injury alleged).

It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. *Brown,* 520 U.S. at 408. The plaintiff must also demonstrate that, through its *deliberate conduct,* the municipality was the "*moving force*" behind the injury alleged. *Id.* (emphasis added). Furthermore, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405.

> Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal custom so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.
> *Brammer–Hoelter v. Twin Peaks Charter Acad.,* 602 F.3d 1175, 1189 (10th Cir.2010) (citations and internal quotation marks omitted).

Thus, in order to establish municipal liability against the Defendant, Plaintiff must show that his constitutional rights were violated AND that such violation was caused by a policy, practice or custom of the Okmulgee County Court Clerk's Office or that Defendant herself personally participated in the alleged constitutional violation(s). *See Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (municipality cannot be held liable under § 1983 unless the act complained of is that of a final policymaker or a custom or usage is shown). Here, there is no allegation or evidence that the Defendant was personally involved in the alleged violation, so Plaintiff's claims must be premised upon some alleged policy, practice or custom of the Okmulgee County Court Clerk's Office.

Defendant argues that she is entitled to summary judgment because Plaintiff cannot show that the alleged violation of Plaintiff's constitutional rights was caused by any policy, practice, or custom of the Okmulgee County Court Clerk's Office. There is no evidence in this case that the Court Clerk's Office had an official policy of issuing bench warrants with the wrong criminal defendant identified thereon. Nor, is there any evidence of a persistent practice or custom of such erroneous warrants being issued by the Clerk's Office.

**\*11** In order for a municipality to be held liable for an un-official practice under § 1983, the practice must be "so permanent and well settled as to constitute a custom or usage with the force of law ... In order to establish a custom, the actions must be persistent and widespread ... practices of [city] officials." *Lankford v. City of Hobart,* 73 F.3d 283, 286 (10th Cir.1996) (internal citations and quotation marks omitted). In determining what level of persistent and widespread conduct will be sufficient to establish municipal liability, it is clear that "normally random acts" and "isolated incidents" fall short. *Church v. City of Huntsville,* 30 F.3d 1332, 1345 (11th Cir.1994). *See also Carter v. Morris,* 164 F.3d 215, 220 (4th Cir.1999) (a "meager history of isolated incidents" is insufficient). Furthermore, the court in *Lytle v. Doyle,* 326 F.3d 463, 473 (4th Cir.2003), required evidence of "

'numerous particular instances' of unconstitutional conduct." A single allegation of unconstitutional conduct is insufficient to establish municipal liability. *Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir.1993) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* ... unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker"); *see also Campbell v. City of San Antonio,* 43 F.3d 973, 977 (5th Cir.1995) (single incident of mistaken arrest insufficient to allege constitutional deprivation). Aside from the circumstances of this case, there is simply no evidence of any prior instances where the Court Clerk's Office has issued warrants identifying the wrong criminal defendant, or any false arrests related to any such instance.

In response, Plaintiff relies almost exclusively upon *Berg v. County of Allegheny,* 219 F.3d 261 (3rd Cir.2000) for the proposition that there is a question of fact as to whether Defendant was deliberately indifferent to an obvious risk of harm by employing a computer information system without any "technological procedures to guard against the erroneous entry of warrant information or no 'double check' to ensure that warrants ... are issued in the correct name ..." [Dkt. 100, p. 19].[2] However, the Tenth Circuit has never before employed or even cited the legal reasoning underlying the *Berg* decision. This Court rejects the rationale employed thereby because same would improperly impose a negligence standard of care with regard to municipal liability under § 1983 and because it threatens to collapse municipal liability under § 1983 into *respondeat superior* liability for mere clerical errors of subordinates.

First, it should be noted that it is undisputed that, in 1997, the Defendant, and many of the Court Clerks across the State of Oklahoma, installed and implemented use of the Kellpro system upon instruction by the Office of the Supreme Court Administrator. As such, the Defendant is not simply free to implement any other system and has virtually no control over the technological capabilities of the system. Furthermore, neither the *Berg* court nor Plaintiff indicate what sort of "technological safeguards" could possibly prevent human data-entry errors of the type at issue herein. Plaintiff suggests that the Defendant employ a policy requiring a record be made anytime information is changed on the system-a feature of which the Kellpro system is capable. However, while such a policy would allow the Defendant to ascertain when a data-entry error was made and who made it after the fact, it would do nothing to prevent such human error in the first instance, or reflect the reason for any made change. As the Tenth Circuit has stated:

> **\*12** Of course, nothing in life is perfect. Neither does anyone expect or even want some sort of maniacally perfect, all-knowing, all-seeing HAL 9000 computer in the government's hands—a situation that would itself no doubt raise Fourth Amendment questions. Instead, the law expects and takes account of human (and computational) frailties ...

*United States v. Esquivel–Rios,* 725 F.3d 1231, 1235 (10th Cir.2013).

The failure to adopt a policy or procedure on any given subject may serve as the basis for liability under § 1983 "only when the omission amounts to an intentional choice, not merely an unintentionally negligent oversight ..." *Doe on Behalf of Doe v. Dallas Independent School Dist.,* 153F.3d 211, 217 (5th Cir.1998) (citation and internal quotation marks omitted). Furthermore, "such an omission is equivalent to an intentional choice only where the entity has acted with deliberate indifference." *Id.* (citing *Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). To demonstrate that the Defendant acted with deliberate indifference in this regard, Plaintiff must show that the Defendant intentionally failed to adopt such a policy with actual knowledge that same was very likely to result in the violation of third persons' constitutional rights. *Berry v. City of Muskogee,* 900 F.2d 1489, 1496 (10th Cir.1990). Furthermore, it is not adequate to show that there was a "mere possibility" that such violations of rights would occur as a result of the failure to adopt such a policy. Rather, Plaintiff is required to show that there was a "strong likelihood" that the omission of such a policy would result in such harm. *Watts v. Laurent,* 774 F.2d 168, 172 (7th Cir.1985) (citations omitted). Moreover, "the failure to enforce a prophylactic policy imposing a standard of care well in excess of what [the Constitution] requires cannot be—and we hold is not-enough by itself to create a triable question over whether county officials were deliberately indifferent to the Constitution." *Porro v. Barnes,* 624 F.3d 1322, 1329–30 (10th Cir.2010).

Here, there is simply no evidence that Defendant intentionally failed to adopt any such policy, practice, or procedure with actual knowledge that such failure was very likely (as opposed to merely possible) to result in the alleged violations of third persons'

constitutional rights. As discussed above, aside from the circumstances of this case, there is no evidence of any prior instances where the Court Clerk's Office has issued warrants identifying the wrong criminal defendant. The fact that the Defendant had employed the Kellpro system for over a decade without any evidence of any comparable problems clearly indicates that there is not a "strong likelihood" that harm would result therefrom. At most, Plaintiff can show an unintentionally negligent oversight on the part of Defendant that resulted in *de minimus* damage to the Plaintiff. However, that is insufficient to establish deliberate indifference. "[D]eliberate indifference is a stringent standard of fault, requiring proof that [an] actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). "It is obduracy and wantonness, not inadvertence or error in good faith," that violate the Constitution. *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Application of the rationale employed by the *Berg* decision would allow this case to proceed in the absence of any evidence of deliberate indifference on the part of the Defendant and would improperly impose a negligence standard of care with regard to municipal liability under § 1983.

 **\*13**  Moreover, application of the *Berg* decision threatens to collapse municipal liability under § 1983 into *respondeat superior* liability for mere clerical errors of subordinates. In *Mitchell v. Aluisi,* 872 F.2d 577 (4th Cir.1989), the Fourth Circuit Court of Appeals faced a similar issue. That case involved the arrest of a woman on a warrant that had been recalled prior to her arrest. The court found that there was "no evidence of any [county] policy to serve invalid warrants" and there was no evidence of a widespread county practice or custom of serving invalid warrants because "plaintiff has not produced evidence of any other example of service of a recalled bench warrant by the respective defendants." *Id.* at 579–80. The court further held:

> Finally, we cannot deduce a municipal policy from bare allegations that state procedures were inadequate to prevent the service of recalled warrants. Plaintiff has suggested various improvements to the County's process for recalling warrants: written lists of all recalled warrants which are phoned into the Sheriff's Department; use of court computers to check the validity of old bench warrants before they are served; cross-checks of outstanding warrants against the district court daily docket sheets. **The absence of such procedures hardly denotes an unconstitutional county policy, however.**

> The Supreme Court has noted that nearly every § 1983 plaintiff will be able to point to something a municipality could have done to prevent an unfortunate incident. Permitting cases to go forward on such a basis "would result in *de facto respondeat superior* liability." *City of Canton, Ohio v. Geraldine Harris,* 489 U.S. 378, ——, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989). **There is also a difference between the occurrence of a clerical error and the existence of an impermissible municipal policy. Even the most adequately trained officers occasionally make mistakes and the fact that they do so "says little about the ... legal basis for holding the city liable."** *Canton,* 489 U.S. at ——, 109 S.Ct. at 1206.

*Id.* at 580 (emphasis added). Much like the *Mitchell* case, there is simply no evidentiary basis herein for holding the Defendant liable based upon either a formal or informal policy, practice, or custom or upon the failure to implement same. Unfortunately, Plaintiff was simply the victim of an inadvertent clerical error. This does not meet the requirements of any constitutional violation. Accordingly, the Defendant is entitled to summary judgment with regard to Plaintiff's § 1983 claims to the extent that same are premised upon an alleged unconstitutional policy, practice, or custom.

## IV. Conclusion

Accordingly, for the reasons set forth above, the Court hereby GRANTS the Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1279357

Footnotes

1    There is no indication that the defendants named in the warrant at issue in *Whitely* were incorrectly named therein.

2    Plaintiff also asserts that Defendant provided no training to guard against mistakes. [Dkt. 100, p. 21]. However, that assertion is without factual support. It is undisputed that all deputy clerks in the Okmulgee County Court Clerk's Office received on-the-job training and annual training on the Kellpro system by Kellpro administrators both in classes in Oklahoma City and at the Court Clerk's Office.

**End of Document**                                        © 2021 Thomson Reuters. No claim to original U.S. Government Works.